**J. Paul SCOTT, Movant,**

v.

**UNITED STATES of America,
Respondent.**

**No. 1402.**

United States District Court
E. D. Kentucky,
Lexington.

Jan. 5, 1961.

Robert E. Stephens, James Park, Jr., Lexington, Ky., for movant J. Paul Scott.

Jean L. Auxier, U. S. Atty., John W. Morgan, Asst. U. S. Atty., Lexington, Ky., for respondent United States.

HIRAM CHURCH FORD, Chief Judge.

On January 31, 1957, J. Paul Scott, a man 30 years of age, his brother, Don Roderick Scott, 28 years of age, and Earl Franklin Morris, 35 years of age, were duly arraigned before the Court and each of them entered his plea of guilty to all counts set out in Indictments Nos. 8730 and 8731 which were then pending against them jointly. Count No. 1 of Indictment No. 8730 charged that the three above-named defendants, prior to the 16th day of December, 1956, and continuing to the 6th day of January, 1957, in the Eastern District of Kentucky, "did unlawfully conspire to commit an offense against the United States, to-wit, to unlawfully and by force enter the Farmers and Traders Bank, Campton, Kentucky, with intent to commit larceny therein; said bank being duly and legally authorized and chartered under the laws of the State of Kentucky, the deposits of which were insured by the Federal Deposit Insurance Corporation under Certificate No. 288, and for the purpose of carrying out said conspiracy, said defendants committed the following overt acts:

"1. Obtained one acetylene torch, one tank of oxygen, one tank of acetylene gas and other equipment to

be used in cutting and opening the vault of said bank.

"2. Obtained two 45 caliber machine guns to be used in the commission of said larceny if necessary and for avoiding apprehension for the commission of said offense.

"3. Transported articles named in numbers 1 and 2 above to Campton, Kentucky for use in burglarizing said bank.

"4. Stationed a Chevrolet automobile near the town of Campton, Kentucky to be used in fleeing from the vicinity of the crime.

"5. Forced entrance to the bank building."

Count No. 2 of Indictment No. 8730 charged that on January 6, 1957, the defendants "did unlawfully and by force" enter the same bank described in Count No. 1, with the intent to commit larceny therein.

Count No. 1 of Indictment No. 8731 charged that on or about the 16th day of December, 1956, at Danville, Boyle County, in the Eastern District of Kentucky, the defendants "did unlawfully steal, purloin and knowingly convert to their own use things of value of $355.00, to-wit: two 45 caliber machine guns, three 30 caliber carbines, and a quantity of 30 caliber ammunition, property of the United States." Count No. 2 of this indictment charged that on January 6, 1957, in Wolfe County, in the Eastern District of Kentucky, the defendants did unlawfully possess one of the 45 caliber machine guns identified by serial number. Count No. 3 of this indictment similarly charged the defendants with unlawful possession of the other 45 caliber machine gun identified by serial number.

In addition to other files and records the problem presented in this proceeding, seems to make it especially important to have before us a complete transcript of the arraignment proceeding, certified by the Court Reporter and filed on May 2, 1957, as part of the record under both indictments, in compliance with 28 U.S.C. § 753(b). It is set out in the margin.[1]

1. "Cases Nos. 8730 and 8731, styled United States of America v. Don Roderick Scott, J. Paul Scott and Earl Franklin Morris, were called for arraignment in the U. S. District Court, Eastern District of Kentucky, at Lexington, on January 31, 1957, before His Honor, H. Church Ford, Judge of said Court. All defendants were before the Court.

\* \* \* \* \*

"The Court: Mr. Roderick Scott, are you represented by counsel?

"Defendant Don Roderick Scott: Yes, sir.

"The Court: Who is your attorney?

"Defendant Don Roderick Scott: Mr. Grigsby.

"The Court: H. M. Grigsby of Springfield, Kentucky?

"Mr. Grigsby: Yes, sir.

"The Court: Mr. J. Paul Scott, are you represented by counsel?

"Defendant J. Paul Scott: Yes, sir, Your Honor.

"The Court: Who is representing you?

"Defendant J. Paul Scott: The same one, Mr. Grigsby.

"The Court: Earl Franklin Morris, have you representation?

"Defendant Earl Franklin Morris: No, sir, Your Honor.

"The Court: Mr. Trigg, will you represent him?

"Mr. Trigg: I will be glad to, Your Honor.

"The Court: I will ask Mr. Trigg to represent you. This is a serious charge made here against you. Are you unable to employ counsel?

"Defendant Morris: Yes, sir, that's right, Your Honor.

"The Court: You are not able to employ an attorney?

"Defendant Morris: No, sir, Your Honor.

"The Court: Mr. Trigg, will you consult with this gentleman and see that he understands this charge? And I will also let you be appointed under the next indictment, No. 8731, and when you have had an opportunity to consult with him, he can decide what he wants to do.

"The two Scott boys, Mr. Grigsby is representing you in both of these cases?

"Both Defendants Scott: Yes, sir.

(At this point the defendant Earl Franklin Morris and his attorney, Mr. Alvin Trigg, withdrew from the courtroom for consultation. Upon their return the following occurred:)

Note 1—Continued

"The Court: Mr. Donald Roderick Scott, Mr. John Paul Scott and Mr. Morris. You, Mr. Roderick Scott, have consulted with your attorney in reference to this case, I assume?

"Defendant D. R. Scott: Yes, sir.

"The Court: Are you prepared to enter your plea, or do you wish to have him formally arraigned, Mr. Grigsby?

"Mr. Grigsby: We will waive arraignment, Your Honor.

"The Court: Is that agreeable with you, Mr. Scott?

"Defendant D. R. Scott: Yes, sir.

"The Court: What is your plea?

"Defendant D. R. Scott: Guilty.

"The Court: Are you pleading guilty to both counts of the indictment?

"Defendant D. R. Scott: Yes, sir.

"The Court: Now as to the indictment in case No. 8731, do you waive formal arraignment in respect to that case?

"Mr. Grigsby: We do, Your Honor.

"The Court: Do you understand that, Mr. Scott?

"Defendant D. R. Scott: Yes, sir.

"The Court: What is your plea to the three counts in that indictment?

"Defendant D. R. Scott: Guilty, sir.

"The Court: I omitted to ask you, Mr. Roderick Scott, before I leave your case —you have entered a plea of guilty to the counts in both these indictments, No. 8730 and No. 8731; do you understand the charges that are made against you in those indictments?

"Defendant D. R. Scott: Yes, sir.

"The Court: You have had a copy of the indictments furnished you?

"Defendant D. R. Scott: Yes, sir.

"The Court: You have read that indictment and consulted with your attorney in regard to the meaning of it, have you?

"Defendant D. R. Scott: Yes, sir.

"The Court: And you are satisfied that you understand it?

"Defendant D. R. Scott: Yes, sir.

"The Court: You have entered a plea of guilty to all the counts, Mr. Scott; I want to ask you this—is your plea of guilty induced by any promise or assurance of any kind that would induce you to plead guilty if you weren't guilty?

"Defendant D. R. Scott: No, sir.

"The Court: You are guilty and that's the reason you are pleading guilty. Is that right?

"Defendant D. R. Scott: Yes, sir.

"The Court: You have had the advice of your attorney, Mr. Grigsby, in regard to it?

"Defendant D. R. Scott: Yes, sir.

"The Court: I will let his plea of guilty be entered to all counts in both indictments.

"Now Mr. John Paul Scott, you are also represented by Mr. Grigsby, your counsel?

"Defendant J. P. Scott: Yes, sir, Your Honor.

"The Court: Have you had him explain to you carefully the charges contained in the two counts of Indictment 8730 and the three charges of Indictment 8731?

"Defendant J. P. Scott: Yes, sir.

"The Court: Do you understand those charges?

"Defendant J. P. Scott: Yes, Your Honor.

"The Court: Do you understand that if you wish the indictment to be read to you and have formal arraignment, you have the right to do so?

"Defendant J. P. Scott: Yes, sir.

"The Court: You don't care for that?

"Defendant J. P. Scott: No, sir.

"The Court: You are satisfied that you understand these charges?

"Defendant J. P. Scott: Yes, sir.

"The Court: What is your plea to Count No. 1 in Indictment 8730?

"Defendant J. P. Scott: I plead guilty, Your Honor.

"The Court: What is your plea to Count No. 2 of Indictment No. 8730?

"Defendant J. P. Scott: Guilty.

"The Court: What is your plea to Count No. 1 in Indictment No. 8731?

"Defendant J. P. Scott: Guilty.

"The Court: And Count No. 2 in Indictment 8731?

"Defendant J. P. Scott: Guilty.

"The Court: And Count No. 3 in Indictment 8731?

"Defendant J. P. Scott: Guilty.

"The Court: Has your plea of guilty been induced or in any way brought about by any promise or assurance of any kind from any person?

"Defendant J. P. Scott: No sir, Your Honor.

"The Court: Are you pleading guilty of your own free and voluntary accord after you understand the charges?

"Defendant J. P. Scott: Yes, Your Honor.

"The Court: Let his plea of guilty be entered.

"Now Mr. Earl Franklin Morris, you have had a copy of this indictment furnished you?

"Defendant Morris: Yes, sir.

"The Court: Do you understand the charges made against you in Indictment No. 8730?

"Defendant Morris: Yes, Your Honor.

"The Court: What is your plea to Count No. 1 of Indictment No. 8730?

"Defendant Morris: Guilty, Your Honor.

"The Court: What is your plea to Count No. 2 in the same indictment?

"Defendant Morris: Guilty, Your Honor.

"The Court: What is your plea to Count No. 1 in Indictment 8731?

"Defendant Morris: Guilty, Your Honor.

"The Court: What is your plea to Count No. 2 of Indictment 8731?

"Defendant Morris: Guilty, Your Honor.

"The Court: And your plea to Count No. 3 in Indictment No. 8731?

"Defendant Morris: Guilty, Your Honor.

"The Court: Now Mr. Trigg, you have had consultation with Mr. Morris as his appointed counsel?

"Mr. Trigg: Yes, sir.

"The Court: I understand that you just entered the case today. Have you had adequate time to consult with him and to see and satisfy yourself that he understands these charges and is pleading to them understandingly?

"Mr. Trigg: Yes, sir.

"The Court: This is what I want to ask you, Mr. Morris: have you been induced in any way or to any extent to enter the pleas of guilty that you have entered, or have any promises or assurances of any kind from any person?

"Defendant Morris: No, sir, Your Honor.

"The Court: Are you entering your pleas of your own free will and voluntarily?

"Defendant Morris: Yes, Your Honor.

"The Court: After advice and consultation with your appointed counsel?

"Defendant Morris: Yes, sir.

(At this point the pre-sentence reports were furnished to the Court by the Probation Officer).

"Mr. Cook: If you please, I have here a letter from Claud M. Bays, medical doctor here in Lexington, in reference to the defendant Morris, in which it states that it would not be injurious to the health of Morris to appear in court today for this arraignment. He is a doctor from the hospital and is the Federal doctor here that the Marshal had examine this defendant. We would like to file that in the record.

"The Court: Let it be filed.

"Mr. Don Roderick Scott, have you any cause to show or anything you wish to say as to why sentence should not be imposed upon you under each of these indictments and under each count of each of them?

"Defendant D. R. Scott: I didn't understand you.

"The Court: Have you anything that you wish to say to the Court or any cause to show why sentence should not be imposed upon you upon the several counts of each of these indictments?

"Defendant D. R. Scott: No, sir.

"The Court: Mr. John Paul Scott, do you have anything you wish to say to the Court or any cause you wish to show as to why sentence should not be imposed upon you on each count of these two indictments?

"Defendant J. P. Scott: No, sir, Your Honor, except I realize these are very serious charges and I would greatly appreciate it if you would be just as lenient on me as you could.

"The Court: Anything further?

"Defendant J. P. Scott: No, sir.

"The Court: Mr. Grigsby, do you wish to say anything in behalf of these men?

"Mr. Grigsby: Nothing, Your Honor.

"The Court: Mr. Earl Franklin Morris, do you wish to say anything to the Court, or is there any cause you wish to offer as to why sentence should not be imposed upon you?

"Defendant Morris: I have no reason, Your Honor.

"The Court: Mr. Trigg, is there anything you wish to say on his behalf?

"Mr. Trigg: I would like to make a brief statement, if Your Honor please. I would like to point out what may be before the Court, so I will make it very brief and to the point. It is my understanding, sir, that throughout this apparent reign of terror, commencing with the robbery and even prior to the actual robbery at Campton and in the ensuing hours and days when there was shooting and wounding, that Mr. Morris played a relatively passive role. He did not break into the bank. I am aware that that in no way relieves him of responsibility as a principal but I am informed, and I believe the record sustains my information, that he didn't participate in any shooting or wounding of the officers in any exchange of fire. He waited outside the bank at Campton and drove the car. Although his liability is, as I say, in no way relieved or depreciated by that fact, I point it out to the Court's attention.

"Secondarily, I am informed by my client that he is now on parole and stands to

serve a remaining six years. In the event that is not before the Court, I felt that in consideration of the amount of sentence that would be forthcoming, the fact that he has six years to serve before such sentence would commence, would be of value.

"Finally, I would like to point out to the Court that Mr. Morris in a sense, by virtue of his wounding and by virtue of his condition now, has been punished to some degree, and on his behalf, as well as the other gentlemen, there are two counties—Fayette County has a charge waiting and some serious charges are forthcoming on a state level in Campton, and I assume that these sentences would not run concurrently. I again suggest that these are facts which might tend to effect a concurrency or some reduction in the amount of sentence, by virtue of the fact that he has six years to run on this sentence and stands to serve a considerable length of time on the state sentence.

"Thank you, Your Honor.

"The Court: Mr. Roderick Scott, you are 28 years old. Is that correct?

"Defendant D. R. Scott: Yes, sir.

"The Court: And Mr. Paul Scott, you are 30?

"Defendant J. P. Scott: Yes, sir.

"The Court: How old are you, Mr. Morris?

"Defendant Morris: Thirty-five.

"The Court: I have read the presentence reports in regard to the statements you have each made to the Probation Officer in regard to your previous history. It is a history of previous crime, gentlemen, and added to this crime makes it difficult to understand why apparently intelligent men like you appear to be would be found in such a position as you are in. Each of you is charged with a criminal conspiracy to burglarize the Farmers and Traders Bank at Campton, Kentucky. The maximum penalty provided for that charge is five years imprisonment or $10,000.00 fine, or both. It is my judgment that each of you should be committed to the Attorney General of the United States, or his authorized representative, for imprisonment for a period of five years on that count. The second count in the indictment charges entering the Farmers and Traders Bank at Campton, Kentucky, on the 6th of January, 1957, with intent to commit larceny. That is an extremely serious charge. The maximum penalty provided for that charge is twenty years imprisonment or $5,000.00 fine, or both. It is my judgment and judgment will be entered imposing upon each of you a period of twenty years imprisonment by providing that you be committed to the custody of the Attorney General of the United States for imprisonment for a period of twenty years. I will make those two sentence—since one is a conspiracy and the other is an overt act which is obviously for the purpose of carrying out the conspiracy and there is some unity in connection with those two offenses—those two penalties will be served concurrently. That is a maximum of twenty years for both of them.

"You get that, do you, Mr. Grigsby?

"Mr. Grigsby: Yes, sir.

"The Court: Then we reach Indictment No. 8731. The charge in Count No. 1 is stealing two .45-caliber machine guns, three .30-caliber carbines and ammunition of the value of $355.00, property of the United States, on the 16th day of December, 1956, from the National Guard Armory at Danville, Kentucky. Of course, the seriousness of that shows in connection with this transaction; the intention to commit a violent robbery is obviously apparent. They were prepared with these machine guns. The penalty in that case is a maximum of ten years imprisonment or $10,000.00 fine. The penalty that I feel compelled to inflict is ten years imprisonment. I take it that it would be useless to impose a fine. The second count in that offense is the unlawful possession of these machine guns, this .45-caliber machine gun which had not been registered with the Secretary of the Treasury, and the third count is the possession of another machine gun. On those counts the penalty in each case is five years imprisonment on Count 2 and five years' imprisonment on Count 3. There is a unity of crime in respect to the stealing and possession so that I can't make them two separate and independent crimes. The penalty of ten years is a heavy penalty. I am going to make those three penalties on Counts 1, 2 and 3 concurrent, but the penalty imposed under Indictment 8731 will be served consecutively to the penalty imposed under Indictment No. 8730. That is, the beginning of the concurrent penalties under 8731 will be at the expiration of the service of penalties imposed under Indictment 8730.

"Mr. Cook: Those penalties are as to each one of the defendants?

"The Court: As to each defendant. Have I made it clear to you, Mr. Grigsby?

"Mr. Grigsby: Yes, Your Honor.

"The Court: And to you, Mr. Trigg?

"Mr. Trigg: Yes, Your Honor."

Relying upon United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, and other kindred cases, the defendant J. Paul Scott, now a prisoner confined in the United States Penitentiary at Alcatraz, filed this proceeding seeking leave of court to withdraw his plea of guilty to the indictments, pursuant to Rule 32(d) of Federal Rules of Criminal Procedure, 18 U.S.C., and invoking the power of the court pursuant to 28 U.S.C. § 2255 to afford him a hearing in person before the court to resolve certain alleged issues of fact set out in his motion in which he asserts and charges that at his arraignment he was without effective representation by counsel; that he was under the influence of drugs which rendered him incapable of understanding the consequences of his acts; that his pleas of guilty were "obtained through fraudulent legal advice of the prosecution before defendant could consult with a defense counsel" and "as a result of certain legal advice and promises made by the prosecution and F.B.I. agents," all of which he asserts was part of. the "full picture of trickery and deceit practiced upon him and the court by the Prosecution and F.B.I. agents."

The United States has filed a motion to dismiss the proceeding.

Entirely putting aside counter-affidavits filed by the United States and looking solely to the affidavits of the moving defendant and his brother and co-defendant in so far as they purport to set out in detail the particular incidents relied upon, we find that they fall so far short of supporting the vociferous accusations asserted in the motion that upon their face they seem to be as obviously incredible as those in the case of Johnson v. United States, 6 Cir., 239 F.2d 698, 699, certiorari denied 354 U.S. 940, 77 S.Ct. 1404, 1 L.Ed.2d 1539, in which the Court said:

" * * * His allegations seem to follow a pattern which has become prevalent to enable convicts under long-time sentences to obtain vacations from imprisonment by trumped-up .charges against their attorneys and court officials, even including district judges."

Moreover, the charges set out in the moving defendant's motion are refuted by his clear and lucid responses to the questions of the court at the arraignment proceedings.

In Burgett v. United States, 8 Cir., 237 F.2d 247, 251, in considering a similar situation, the court said: "The mere denial of that which the appellant had theretofore admitted does not raise a substantial issue of fact within the meaning of Section 2255 or the Supreme Court's pronouncements in the Hayman case." In the Hayman case [342 U.S. 204, 72 S.Ct. 274] the Supreme Court emphasized that the presence of a "substantial issue of fact" is essential to an independent and collateral inquiry such as is here sought, saying:

"The existence of power to produce the prisoner does not, of course, mean that he should be automatically produced in every Section 2255 proceeding. This is in accord with procedure in habeas corpus actions. Unlike the criminal trial where the guilt of the defendant is in issue and his presence is required by the Sixth Amendment, a proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction. Whether the prisoner should be produced depends upon the issues raised by the particular case."

There is no controversy in this case in respect to the court's files and records. They adequately reflect that at the time of his arraignment, J. Paul Scott was effectively represented by counsel of his own choice; that he was fully advised of the charges contained in the indictment; that he was able to understand the consequences of his acts and that he was not induced to enter his pleas of guilty by trickery, deceit or fraud on the part of the prosecutor, F.B.I. agents or any other person. His affidavits to the contrary filed herein constitute mere denials of facts which he readily admitted at his arraignment and are insufficient to

raise substantial issues of fact within the meaning of U. S. v. Hayman, supra, or to invoke the power of the Court under 28 U.S.C. § 2255, or under Rule 32(d), Burgett v. United States, supra, Johnson v. United States, supra.

The files and records of the Court conclusively show the moving defendant is not entitled to relief.

For the reasons indicated, the motion of the moving defendant for leave to withdraw his plea of guilty pursuant to Rule 32(d) F.R.Crim.P., and his motion to be brought before the Court in person and for a hearing and vacation of sentence pursuant to 28 U.S.C. § 2255, should be denied, and this proceeding should be dismissed. An order will be entered in conformity herewith.